# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STEPHEN TOLIVER,

      Petitioner,

      v.                                   Case No. 02-C-1123

GARY R. McCAUGHTRY
  Warden, Waupun Correctional Institution,

      Respondent.

## DECISION AND ORDER

On November 18, 2002, the petitioner, Stephen Toliver, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of first-degree intentional homicide, as party to a crime and was sentenced to a life imprisonment.

The petitioner challenges the judgment of his conviction on the following grounds: (1) his due process right to a fair trial was violated when the trial court refused to instruct the jury on the lesser-included offense of felony murder; (2) his Sixth Amendment right to confront witnesses was violated when the state court admitted a hearsay statement from Oliver Toliver; (3) his Fourteenth Amendment right to due process was violated when the prosecutor failed to disclose exculpatory evidence; (4) his Fourteenth Amendment right to due process and a fair trial were violated when the state elicited false testimony from its cooperating witness; (5) his Fourteenth Amendment right to due process was violated when the state court denied his request for a new trial based upon newly-discovered evidence; (6) he was denied effective assistance of trial counsel; and (7) his Fourteenth Amendment right to due process was violated when the state court failed to follow the federal district court's remand order.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

This court conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. By order filed December 19, 2002, this court determined that "it does not plainly appear from the 'face of the petition' that the petitioner is not entitled to relief." Thus, this court ordered the respondent, Warden Gary R. McCaughtry of the Waupun Correctional Institution, to answer the petition for a writ of habeas corpus. The court also granted the petitioner's motion for appointment of counsel and counsel was appointed. Subsequently, the respondent answered the petition and the parties briefed the petition for a writ of habeas corpus. Therefore, the petition is ready for disposition and will be addressed herein.

**RELEVANT FACTUAL BACKGROUND**

FACTS

The preliminary facts of this case were set forth by the Wisconsin Court of Appeals in its May 10, 1994 decision:

> The events which led up to the murder of Rogers began when Commosie Thompson, a seventeen-year-old drug dealer, allegedly discovered that $1,800 of his drug money was missing. Thompson informed [the petitioner], one of his drug runners, about the missing money. [The petitioner] told Thompson that Tina Rogers had taken it.

- 2 -

[The petitioner] and his brother, Oliver Toliver, went out looking for Rogers, and upon finding her, they brought her back to the Toliver home, where she was murdered. The murder took place in the presence of four witnesses. One witness, Thompson, testified that [the petitioner] accused Rogers of taking the money, which Rogers denied. Thompson further testified that he observed Oliver Toliver shoot Rogers. Thompson ran out of the room, but heard [the petitioner] say, "Kill that bitch, kill her."

Another witness, Corey Henry, testified that he saw Oliver and [the petitioner] come up the stairs with Rogers. Oliver was carrying an automatic weapon and [the petitioner] had a sawed-off shotgun. [The petitioner] placed the shotgun next to Thompson and told him to "shoot whoever you think took the money." Henry then observed Oliver get up, and while Rogers pled for her life with her hands to her forehead, Oliver shot her in the forehead. The bullet passed through Rogers' right hand before hitting her forehead. At this point, Henry ran out of the room along with Thompson and the third witness, Darian Robinson. Robinson's testimony corroborated the evidence of Thompson and Henry. Both Robinson and Henry testified that they heard a second gunshot as they were running down the stairs outside the room.

Jo'Etta Foster, the fourth witness, was in another room when she heard the first shot. She arrived at the crime scene and saw Rogers slumped on the floor with blood running down between her legs. Foster heard [the petitioner] say, "Shoot the bitch," and then she observed Oliver fire the second shot. Rogers' body was dragged into the kitchen by Oliver, placed into two plastic bags, and then wrapped in a quilt. Foster observed [the petitioner] and Oliver place the wrapped body on the steps leading to the attic.

[The petitioner] told Thompson the next day that he taped Rogers' picture to her buttocks. Foster testified that when the Tolivers returned from disposing of Rogers' body on Lincoln Memorial Parkway, they persuaded her to verify an exculpatory "story" that Rogers had been arguing with someone named "Frosty" and had left in a silver car. Out of fear, she agreed to do so. On May 15, 1991, the body of twenty-four-year-old Tina Rogers was found wrapped in plastic containers on Lincoln Creek Parkway in Milwaukee with wounds to her head and her picture duct-taped to her buttocks.

State v. Toliver, 185 Wis.2d 708, 520 N.W.2d 110 (Wis. Ct. App. 1994)

The day after the shooting, Jo-Etta Foster was in an automobile with the petitioner and Oliver Toliver. She asked Oliver why he shot Rogers, and he stated "he would do anything for his brother, Stephen, and his mother, Carey." (Foster Tr. At 10.) This statement was admitted into evidence at the petitioner's trial as an adoptive admission and a statement of a coconspirator in furtherance of a conspiracy.

- 3 -

## PROCEDURAL HISTORY

On March 16, 1992, following a jury trial at which Milwaukee County Circuit Court Judge John J. DiMotto presided, the petitioner was convicted of first-degree intentional homicide, as party to a crime. Subsequently, Judge DiMotto sentenced the petitioner to life imprisonment with a parole eligibility date of December 14, 2045. On direct appeal to the Wisconsin Court of Appeals, the petitioner, who appeared pro se, argued that: (1) the evidence was insufficient to sustain his conviction; (2) deficiencies in the arraignment denied him due process of law; (3) the trial judge denied him a fair trial by refusing to recuse himself; (4) he was denied a fair trial due to prosecutorial misconduct; (4) his trial counsel was ineffective; and (5) he was erroneously denied appellate counsel. The petitioner's direct appeal was denied on all grounds and his conviction was affirmed by the Wisconsin Court of Appeals on May 10, 1994. (Answer Exh. C at 2). The Wisconsin Supreme Court denied the petitioner's petition for review on July 19, 1994. (Answer, Exh. D).

Subsequently, the petitioner obtained counsel and filed a petition for a writ of habeas corpus in the Wisconsin Court of Appeals pursuant to State v. Knight, 168 Wis. 2d 509, 522, 484 N.W.2d 540 (1992), asserting that he was denied the right to the effective assistance of appellate counsel. (Answer, Exh. E at 1). The court of appeals denied the petition ex parte on February 26, 1996. The Wisconsin Supreme Court denied the petitioner's petition for review on May 7, 1996.

On September 26, 1996, the petitioner filed a petition for a writ of habeas corpus in federal court, asserting that: (1) he was denied the effective assistance of appellate counsel when his counsel was allowed to withdraw and no other attorney was appointed to replace her; (2) his right to due process and a fair trial were denied when the trial court refused to instruct

Case 2:02-cv-01123-PJG   Filed 01/31/06   Page 4 of 30   Document 41

the jury on the lesser-included offense of felony murder; (3) he was denied his Sixth Amendment right to cross-examine a prosecution witness because the state misrepresented promises it made to a witness in exchange for testimony; and (4) his right to confront witnesses was denied when the trial court admitted a hearsay statement from the petitioner's brother through Jo-Etta Foster. The district court dismissed the petitioner's petition without prejudice, finding that he had exhausted his state court remedies only with respect to his claim that he was denied appellate counsel. <u>Wisconsin ex rel. Toliver v. McCaughtry</u>, No. 96-C-117, slip op. (E.D. Wis. Nov. 8, 1996).

The petitioner then filed a post-conviction motion pursuant to Wis. Stat. § 9074.06 in the state trial court. In his motion, the petitioner sought relief on the three unexhausted claims. The court denied the petitioner's motion. The petitioner appealed to the Wisconsin Court of Appeals.

While his appeal was pending, the petitioner filed another federal habeas petition in this court in order to guarantee that his petition was not barred by the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1), which went into effect on April 24. 1996. On July 16,1997, the district court dismissed the petition for failing to exhaust state court remedies pointing out that the one-year limitation period would be tolled during the period in which the petitioner's motion for post-conviction review in state court was pending.

The state court of appeals affirmed the trial court's decision denying the petitioner's post-conviction motion on June 8, 1998. The petitioner's request for review with the Wisconsin Supreme Court was denied on August 21, 1998.

The petitioner then filed another petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this district. The petitioner raised the same claims he raised in his original federal

habeas petition. The district court held that the trial court denied the petitioner's right to effective assistance of appellate counsel when it found that he had waived the right to appointed counsel. Wisconsin ex rel. Toliver v. McCaughtry, 72 F. Supp. 2d 960, 976 (E.D. Wis. 1999). The district court granted the writ of habeas corpus conditionally, which allowed the state to reinstitute the petitioner's appeal and provide him appointed appellate counsel, unless he knowingly and intelligently decided to proceed pro se. Id. at 979. Because of the resolution of the petitioner's petition, the district court declined to address any of the petitioner's other three claims. At the end of its decision, the district court stated:

> [The petitioner] is concerned with this approach because he does not want to lose out on federal review of the remaining claims in his petition. It appears to me, however, that the recommencement of [the petitioner's] direct appeal will wipe clean the slate and reset his direct review for the purposes of AEDPA. By ordering a new appeal I have essentially 'unexhausted' the remainder of his claims.

Id.

In the Milwaukee County Circuit Court on his newly allowed direct appeal with counsel, the petitioner, by counsel, raised the following issues: (1) he was deprived of a fair trial when the trial court refused to instruct the jury of the lesser included offense of felony murder; (2) he was deprived of his rights to due process and confrontation when the trial court admitted hearsay testimony; (3) he was denied a fair trial due to prosecutorial misconduct; (4) the affidavits of two potential defense witnesses constituted newly-discovered evidence; (5) he was denied effective assistance of trial counsel; and (6) a new trial should be held in the interests of justice. (Answer, Exh. K at 2). The Milwaukee County Circuit Court denied the petitioner's motion for post-conviction relief on August 24, 2000. Id. at 22.

The petitioner presented his claims to the Wisconsin Court of Appeals, raising the same claims he raised in the trial court. In addition, the petitioner argued that the trial court did not

Case 2:02-cv-01123-PJG   Filed 01/31/06   Page 6 of 30   Document 41

comply with the federal court order remanding the case because it did not hold an evidentiary hearing on his post-conviction motion. The court of appeals affirmed the trial court on all grounds. (Answer, Exh. O). The Supreme Court of Wisconsin again denied the petitioner's request for review on January 29, 2002. (Answer, Exh. R).

## APPLICABLE LAW

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. Lindh v. Murphy, 96 F.3d 856, 870-77 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F.Supp.2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]). A state court's factual determination is correct unless a petitioner overcomes it with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 529 U.S. 362 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 120 S. Ct. at 1523).

A federal court may also grant habeas relief if the state court unreasonably applied Supreme Court law or based its decision on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). A state court's factual determination is correct unless a petitioner overcomes it with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that

> [u]nreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

- 8 -

relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 120 S. Ct. at 1522).  Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable.  Washington, 219 F.3d at 628.

## ANALYSIS

The petitioner, in his brief filed in support of his petition, abandons his claim that the state court violated his Fourteenth Amendment right to due process when it denied his request for a new trial based upon newly discovered evidence.  As it is not the responsibility of this court "to research and construct the parties' arguments," the petitioner has waived such a claim.  See, e.g., Spath v. Hayes Wheels Intern.-Indiana, Inc., 211 F.3d 392, 397 (7th Cir. 2000); see also Johnson v. McCaughtry, 92 F.3d 585, 595 n.19 (7th Cir. 1996).  Therefore, it is summarily rejected.

### Lesser-Included Offense Instruction

The petitioner asserts that the Wisconsin courts denied him his constitutional right to due process of law and a fair trial by refusing to instruct the jury on the lesser-included offense of felony murder.  Specifically, the petitioner asserts that a "fundamental miscarriage of justice" occurred because, even though he presented evidence sufficient for the jury to find him not guilty of party to the crime of first-degree intentional homicide, the trial court refused to instruct the jury on the lesser-included offense of felony murder.

With regard to this issue, the Wisconsin Court of Appeals stated:

We have carefully considered [the defendant's] claim, keeping in mind that an instruction regarding a theory of defense ordinarily is required where there is "'any foundation in the evidence, even though the evidence may be weak,

- 9 -

insufficient, inconsistent, or of doubtful credibility.'" United States v. Lehman, 468 F.2d 93, 108 (7th Cir. 1972) (citation omitted). With further assistance from the parties at oral argument, we have evaluated whether the felony-murder instruction was supported by sufficient evidence and, in doing so, recognized that we must not, in the words of State v. Mendoza, 80 Wis. 2d 122, 152, 258 N.W.2d 260 (1977), "weigh the evidence" or "look to the 'totality' of the evidence . . . in determining whether the instruction was warranted." Rather, we must view the evidence in the light most favorable to [the defendant] and the giving of the felony-murder instruction. See State v. Jones, 147 Wis. 2d 806, 809, 434 N.W.2d 380 (1989).

(Answer, Exh. O at 5). The court concluded, however, that "although [the defendant] correctly contends that his conduct could have constituted felony murder, he has failed to clear the first hurdle that must be cleared in order to gain the lesser-included-offense instruction: a reasonable basis for acquittal on first-degree intentional homicide, party to a crime." Id. at 6.

In his brief filed in support of his petition, the petitioner cites to Robertson v. Hanks, 140 F.3d 707, 710 (7th Cir. 1998) which, in turn cited to Beck v. Alabama, 447 U.S. 625, 627 (1980). The petitioner cites no other United States Supreme Court law with respect to this issue.

In Beck, the Court held that the death sentence may not constitutionally be imposed after a jury verdict of guilt on a capital offense where the jury was not permitted to consider a verdict of guilty of a lesser-included offense. 447 U.S. at 633-45. The Court emphasized that "there is a significant constitutional difference between the death penalty and lesser punishments." Beck, 447 U.S. at 637. The Court also expressly stated: "We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case." Id. at 638 n.14.

Subsequently in Schad v. Arizona, 501 U.S. 624, 645 (1991), the Court emphasized that its "fundamental concern in Beck was that a jury convinced that the defendant had committed

- 10 -

some violent crime but not convinced that he was guilty of a capital crime might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all." A similar sentiment was expressed in Hopper v. Evans, 456 U.S. 605, 611 (1982), where the Court stated: "Our holding in Beck, like our other Eighth Amendment decisions in the past decade, was concerned with insuring that sentencing discretion in capital cases is channeled so that arbitrary and capricious results are avoided." Thus, the Court has reiterated that its holding in Beck was premised on the fact that it was a capital case. The Court has not extended its holding in Beck to non-capital cases.

Wisconsin law does not provide for the death penalty for any criminal offenses. The crime of first-degree intentional homicide is not a capital offense under Wisconsin law. As such, the petitioner has not established that the trial court's decision not to instruct the jury on the lesser-included offense of felony murder is contrary to, or a violation of, federal law as determined by Supreme Court law. Therefore, the petitioner's request for issuance of a writ of habeas corpus on such ground will be denied.

The court recognizes that Reeves v. Battles, 272 F.3d 918 (7th Cir. 2001), was decided after AEDPA's passage and AEDPA apparently applied to the case.[1]  However, the court did not explicitly consider whether its analysis was consistent with AEDPA. In fact, the court did not even mention AEDPA or its standards.

### Confrontation Claim

The petitioner asserts that the Wisconsin courts violated his Sixth Amendment right to confront witnesses when it admitted a hearsay statement of his brother, Oliver. Jo-Etta Foster

---

[1]The district court applied AEDPA's standard.  United States ex rel. Battles v. Reeves, 2000 U.S. Dist. LEXIS 14565 (N.D. Ill. Aug. 29, 2000).

- 11 -

testified that, in the petitioner's presence, Oliver said he shot Tina Rogers because he would do anything for his brother, sister, and mother. (Petitioner's Appendix, App. 7 at 122). The petitioner asserts that the Wisconsin courts made an "unreasonable determination[ ] of . . . fact[ ] in light of the evidence presented" by allowing the hearsay statement of Jo-Etta Foster into evidence. (Petitioner's Memorandum in Support of Petition for a Writ of Habeas Corpus [Petitioner's Memorandum] at 17). Specifically, the petitioner asserts that the trial court "did not make an adequate finding that [he] adopted Oliver Toliver's statement." Id.

The respondent contends that the petitioner failed to show that the effect of the trial court's evidentiary ruling on the admissibility of his brother's out-of-court statement as an adoptive admission of his own rose to due process status and, therefore, such a claim is not cognizable in a federal habeas proceeding. The respondent further contends that the Wisconsin Court of Appeals' decision that the petitioner's Sixth Amendment right to confrontation was not violated by the admission of Foster's testimony was not contrary to and did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court.

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. However, the confrontation right is not absolute; a literal reading of that right would essentially require the exclusion of any statement made by a declarant who was not available at trial and would necessarily exclude all hearsay evidence. Ohio v. Roberts, 448 U.S. 56, 63 (1980), abrogated by Crawford v. Washington, 541 U.S. 36 (2004) (regarding only testimonial evidence).

- 12 -

Recently, the Supreme Court, in <u>Crawford v. Washington</u>, held that the Confrontation Clause bars admission of testimonial statements where the declarant is unavailable and the defendant was unable to cross-examine the declarant. 541 U.S. at 69. This decision does not, however, apply to the petitioner's claim. Notwithstanding the fact that the statement at issue in this case was not a testimonial statement, the court of appeals for this circuit has held that <u>Crawford</u> does not apply retroactively to collateral challenges. <u>Murillo v. Frank</u>, 402 F.3d 786 (7th Cir. 2005), <u>Bintz v. Bertrand</u>, 403 F.3d 859 (7th Cir. 2005). Thus, the court will analyze this issue according to <u>Roberts</u>, the clearly established Supreme Court precedent at the time of the state court decisions. <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362 (2000) ("'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to dicta, of this Court's decisions as of the time of the relevant state court decisions").

In <u>Roberts</u>, the Supreme Court set forth a two-step approach to be used in determining whether hearsay evidence satisfies the requirements of the Confrontation Clause. <u>Id.</u> at 65-66. The first requirement is that the witness be unavailable. <u>Id.</u> at 65. Once a witness is shown to be unavailable, the second step is to determine whether the hearsay statement bears an adequate "indicia of reliability." <u>Id.</u> at 65-66. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." <u>Id.</u> at 66. When hearsay evidence does not fall within a firmly rooted exception, it may still be admitted upon a showing of "particularized guarantees of trustworthiness." <u>Id.</u>

The trial court ruled that Oliver's comment was admissible as a statement of a co-conspirator in furtherance of the conspiracy under Wis. Stat. § 908.01(4)(B)5 and that it was

also admissible as an adoptive admission under Wis. Stat. §908.01(4)(b)2.[2]  In so ruling, the trial court cited to <u>White v. Illinois</u>, 502 U.S. 346 (1992) and <u>United States v. Inadi</u>, 475 U.S. 387 (1986).  In <u>Inadi</u>, the Court held that co-conspirator statements made in furtherance of the conspiracy were admissible without a showing that the declarant was unavailable.  Similarly, in <u>White</u>, the Court held that spontaneous declarations, as well as statements made in the course of receiving medical care, are made under circumstances and in contexts that provide substantial guarantees of their trustworthiness, notwithstanding the fact that they are not subjected to cross-examination.  Thus, the court held that they do not require a showing that the declarant is unavailable.  Therefore, the trial court concluded that a showing of unavailability of the declarant was not necessary.

The Wisconsin Court of Appeals agreed with the trial court's conclusion that the statement was admissible as an adoptive admission under Wis. Stat. § 908.01(4)(b)2.  The court quoted <u>Caccitolo v. State</u>, 69 Wis. 2d 102, 110, 230 N.W.2d 139, 144 (1975), which explained:

> [I]f a statement is made in the presence of . . . the defendant . . . which would ordinarily be  denied by [the defendant] if it were not true[,] and [the defendant] does not deny it, then [the defendant] has forgone the opportunity to dispute the statement . . ..  Since the person whose interest was damaged by the statement did not avail himself of the opportunity to refute it, it is presumably trustworthy.

(Answer, Exh. O at 11).  The court also determined that "such an adoptive admission falls within the rule on firmly rooted hearsay exceptions, . . . thus obviating the need for a court to

---

[2]Under Wis. Stat. § 908.01(4)(b)2, "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . [a] statement of which the party has manifested the party's adoption or belief in its truth."

- 14 -

further consider whether the statement is accompanied by indicia of reliability beyond the statement itself." Id. (citations omitted). The Wisconsin Court of Appeals concluded that:

> Oliver's comment, in [the petitioner's] presence, that he shot Rogers because 'he would do anything for his brother, Steve," linked his (Oliver's) conduct to [the petitioner's] intentions. [The petitioner], in turn, had the opportunity to dispute the statement–[the petitioner] could have protested that Oliver did not shoot Rogers for him because he had not intended that Oliver Shoot her. Because [the petitioner] 'did not avail himself of the opportunity to refute' Oliver's statement, it was 'presumably trustworthy' and admissible under WIS. STAT. § 908.01(4)(b)2.

Id.

The petitioner asserts that the Wisconsin Court of Appeals unreasonably determined the facts when it concluded that he had adopted Oliver Toliver's statement. However, whether the defendant "adopted" Oliver's out-of-court statement by remaining silent is a question of law, not fact. None of the facts are in dispute: Oliver made a statement, the statement was made in a car in the presence of the petitioner, and the petitioner remained silent (i.e., he did not deny the statement). Moreover, contrary to the petitioner's argument, adoption of another's statement can be manifested by any appropriate means, including silence. See Marshall v. Young, 833 F.2d 709, 716 n.3 (7th Cir. 1987). "[A] statement may be adopted as long as the statement was made in the defendant's presence, the defendant understood the statement, and the defendant has the opportunity to deny the statement, but did not do so." United States v. Ward, 377 F.3d 671, 675 (7th Cir. 2004). In this case, Oliver made the statement in the petitioner's presence, the petitioner never disputed that he understood the statement and the petitioner had an opportunity to deny the statement, but he remained silent.

Adoptive admissions are not hearsay and, "[t]he lack of opportunity to cross-examine the declarant of a statement the defendant has adopted as his own does not violate the

confrontation clause." See United States v. Allen, 10 F.3d 405, 413 (7th Cir. 1993) (citing United States v. Rollins, 862 F.2d 1282, 1297 [7th Cir. 1988]). That is because:

> an 'adoptive admission' is a statement that the defendant has adopted as his own. Thus the defendant himself is, in effect, the declarant. The "witness" against the defendant is the defendant himself, not the actual declarant; there is no violation of the defendant's right to confront the declarant because the defendant only has the right to confront "the witnesses against him.

Allen, 10 F.3d at 413. Accordingly, the Wisconsin Court of Appeals' decision that the petitioner's Sixth Amendment right to confront witnesses was not violated is not contrary to, or an unreasonable application of, existing Supreme Court law nor is it based on an unreasonable determination of the facts in light of the evidence presented.

## Exculpatory Evidence Claim

The petitioner asserts that the Wisconsin courts unreasonably applied Brady v. Maryland, 373 U.S. 83 (1963) and its progeny in rejecting his claim that the prosecutor failed to disclose exculpatory evidence. The petitioner asserts that a man named Cornell Smith wrote a letter to Milwaukee County Assistant District Attorney (ADA) Mark Williams in which he disclosed information that had come to him regarding the murder of Tina Rogers. The petitioner further asserts that Mr. Smith's communication with ADA Williams was material to two aspects of his defense. First, the petitioner asserts that Mr. Smith's testimony would have further supported his defense that he was not guilty of first-degree intentional homicide, party to a crime, and that the jury should have been instructed on the lesser-included offense of felony murder. Second, the petitioner asserts that Mr. Thompson's version of events as told to Mr. Smith is significantly different from Mr. Thompson's testimony at trial and he could have used the information in Mr. Smith's letter to impeach Mr. Thompson.

- 16 -

In response, the respondent asserts that the decision of the Wisconsin Court of Appeals reflects a reasonable application of Brady and subsequent cases.  Specifically, the respondent asserts that the court's decision that "Smith's testimony could not have altered the jury's view of [the petitioner's] involvement in the homicide" was not an unreasonable application of Supreme Court law.  (Respondent's Brief in Opposition to Petition for Writ of Habeas Corpus [Respondent's Brief] at 24, quoting Answer, Exh. O at 19-20).

The prosecution has an affirmative duty to disclose evidence that is both favorable to the defense and material to either guilt or punishment.  Kyles v. Whitley, 514 U.S. 419, 432-34 (1995); United States v. Bagley, 473 U.S. 667, 674-75 (1985); Brady, 373 U.S. at 87.  Exculpatory evidence as well as impeachment evidence must be disclosed.  Giglio v. United States, 405 U.S. 150, 154 (1972).

To establish a Brady violation, a petitioner must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material to an issue at trial.  Boss v. Pierce, 263 F.3d 734 (7th Cir. 2001) (citing Brady, 273 U.S. at 87).  Suppressed evidence is material "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  Kyles, 514 U.S. at 433-34 (quoting Bagley, 473 U.S. at 682 [opinion of Blackmun, J.]).  There is a reasonable probability of a different result where the government's evidentiary suppression "undermines confidence in the outcome of the trial."  Kyles, 514 U.S. at 434 (quoting Bagley, 473 U.S. at 678).

- 17 -

The Wisconsin Court of Appeals' September 19, 2001, decision sets out the material facts with respect to this claim:

> According to Smith's March 30, 2000 affidavit, which accompanied [the petitioner's] postconviction motion, he (Smith) wrote a letter to the Toliver prosecutor on June 10, 1991, asking the prosecutor to "talk with" a Kenosha County assistant district attorney to help him (Smith) obtain clemency. In exchange, Smith offered, "I would testify to what Commosie Thompson and Corey Henry told me [about the murdered woman] when I spoke with them over the telephone on May 28th, 1991." In substantial part, Smith's affidavit continued:

>> I called Corey, and he told me that [he] and Commosie had almost gotten charged with a murder. I asked what murder, and Corey told me that Commosie's mother[']s boyfriend['s] brother, a dude they called Oz, killed this female named Tina Rogers. Corey then gave Commosie the phone to tell me what happened. Commosie told me that he thought Tina had stolen his stash "money/some cocaine" out of his room. So he confronted her about it after his mother tracked her down at some bar she was at, then his mother's boyfriend, Stevie Toliver, and his brother, Oz, "Oliver Toliver[,"] went to the bar and picked her up and brought her home. Commosie[ ] said he asked her why she stole his stash, she laughed about it, then Oz . . . went to do something to Tina because she laughed, but Stevie pushed him back and told him to back off or chill out.

>> Commosie said Oz didn't like Tina because she wouldn't give him any action sexually even though she was a crack head and usually dope dated. Corey was in the background confirming what Commosie was telling me by yelling, that's right. He went on to say that Stevie told him, look man, she must, didn't steal it even though she's the only crack head in the house, then he threw his shot[ ]gun to Commosie and told him if you think I took it shoot me or whoever you think stole it! I asked him if dude, Stevie, really said that and he said, yeah, but he knew dude was bluffing, but when dude said that all of a sudden a shot was fired, and everybody looked and saw Oz standing over Tina, pointing his gun, then Stevie grabbed at dude and yelled, you killed the bitch! Then he, Commosie, Corey, and their guy Dee, "Darien Williams" ran down the stairs getting out of there when they heard another shot fired. I asked if he left his mother in the house and he laughed and said, hell yeah.

I asked how they could almost get charged when dude did the shooting, Corey was back on the phone, and he said that the police and D.A.[ ] were going to charge them with murder if they didn't cooperate. I asked him what was the D.A.'s name, that is when I learned Mark Williams was the Assistant District Attorney in the case. Corey and Commosie told me that the police wanted Commosie's mother[']s boyfriend and his brother who done the killing and that the police more or less told them what to say in their statements . . . .

I told Mr. Williams, Commosie told me that the day after the murder he went home and talked to his mother about what happened and she told him that she had things under control and to talk with Corey and Dee "Darien" about keeping quiet and she would take care of everything else and would keep them out of it. He said he talked to Stevie . . . and asked him why Oz did that? Commosie said Stevie told him Oz was crazy! And had problems with crack head women, that's why he probably killed Tina. Commosie said he knew that Oz was trying to get with Tina on the sex side but she thought he was funny looking and wouldn't give him any action, not even on the dope dating tip.

. . .

I heard back from Mr. Williams, either on June 17th or 18th, 1991, and he told me that what I had written to him . . . didn't shed anything new in the homicide of Tina Rogers, and that he couldn't help me with my goal to seek clemency anyway because I was convicted in another jurisdiction.

(Answer, Exh. O at 17-19).

The Wisconsin Court of Appeals, citing Brady v. Maryland, 373 U.S. 83, 87 (1963), Strickler v. Greene, 527 U.S. 263, 280 (1999) and United States v. Bagley, 473 U.S. 667, 682 (1985), concluded that "disclosure of the alleged Smith-Williams correspondence would not have affected the outcome of [the petitioner's] trial."(Answer, Exh. O at 19). The court determined that if it assumed that the correspondence took place[3] and assumed that Smith

---

[3]The court referred to the letter as the "alleged" correspondence because the prosecutor "'alleged that he had not received Smith's letter.'" (Answer, Exh. O at n.10).

testified consistent with his affidavit, "his statements conceivably could have affected the jury's views of the persons Smith named, their motives for testifying, and Oliver's reasons for shooting Rogers." Id. Nevertheless, the court concluded that "Smith's testimony could not have altered the jury's view of [the petitioner's] involvement in the homicide." Id. at 20. Specifically, the court determined that "'[t]he facts . . . overwhelmingly established [the petitioner's] culpability, indeed his leadership, for this savage murder.'" Id. at 9. The court recited the facts:

> [The petitioner] responded to Thompson's page. [The petitioner] and Oliver armed themselves and brought Rogers back to Thompson. [The petitioner] directed Thompson to shoot whomever Thompson believed had taken the drug money.

Id. The court ultimately concluded that "'[a]lthough Oliver immediately caused Rogers' death, it was [the petitioner] who intentionally directed it and assisted in it.'" Id. Thus, the court concluded that the correspondence was not material, i.e., that there was no reasonable probability that the correspondence from Cornell Smith, if disclosed to the petitioner, would have produced a different result at trial.

This court cannot conclude that the state court's determination that the suppressed evidence was not material is contrary to, or an unreasonable application of, clearly established Supreme Court precedent. In other words, this court cannot conclude that the state court's determination that although Mr. Smith's testimony possibly would have affected the jury's views of the persons Mr. Smith named, their motives for testifying, and Oliver's reasons for shooting Ms. Rogers, the result of the proceeding would have been different. The suppressed evidence did not "undermine[ ] confidence in the outcome of the trial." Kyles, 514 U.S. at 434 (quoting Bagley, 473 U.S. at 678).

<u>False Testimony Claim</u>

The petitioner asserts that his Fourteenth Amendment due process rights were violated when the state elicited false testimony from Corey Henry. Mr. Henry testified that he witnessed Ms. Rogers' murder and that, immediately after the petitioner told Mr. Thompson to shoot whomever he thought took the money, Oliver Toliver shot Ms. Rogers in the head. Mr. Henry also testified that the petitioner was directing the sequence of events in the room immediately preceding Ms. Rogers' murder. According to the petitioner, Mr. Henry falsely testified that he was subject to a mandatory-minimum sentence of three years rather than the presumptive mandatory-minimum sentence of three years to which he was subject. The petitioner asserts that the state court unreasonably applied United States Supreme Court law by focusing on whether an undisclosed agreement between Mr. Henry and the state existed so that he knew he would not receive a three-year sentence. The petitioner further asserts that the relevant issue is that Mr. Henry's testimony that he was facing a minimum of three years in prison was elicited by the state, was false, was known or should have been known to the state as not accurate, and was not corrected.

In response, the respondent asserts that the conclusions of the Wisconsin state courts were not contrary to, and did not involve an unreasonable application of, United States Supreme Court law. Specifically, the respondent asserts that the petitioner did not offer or provide proof in the state courts that the prosecutor made knowing use of perjured testimony as is required by clearly established Supreme Court precedent. Rather, the respondent contends that all the petitioner established in the state courts was that Mr. Henry and the prosecutor were mistaken and that Mr. Henry's testimony on this issue was incorrect.

- 21 -

The prosecution's knowing use of false testimony constitutes a denial of due process because it is incompatible with "'rudimentary demands of justice.'" United States v. Kaufmann, 783 F.2d 708, 709 (7th Cir. 1986) (quoting Mooney v. Holohan, 294 U.S. 103, 112 [1935]). Thus, "a conviction obtained by knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Bagley, 473 U.S. at 678 (quoting United States v. Agurs, 427 U.S. 97, 103 [1976]). This standard "may as easily be stated as a materiality standard under which the fact that testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt." Bagley, 473 U.S. at 679.

This "strict standard of materiality" is applied not just because the prosecution's knowing use of perjured testimony involves prosecutorial misconduct, but "more importantly because [such cases] involve a corruption of the truth-seeking function of the trial process." Agurs, 427 U.S. at 104. The principle that the prosecutor may not knowingly use perjured testimony applies equally to exculpatory and impeachment testimony. Bagley, 473 U.S. at 676-77.

The Wisconsin Court of Appeals determined that although the petitioner implied "that Mr. Henry had an undisclosed agreement with the State and that at an evidentiary hearing he would be able to establish this by providing 'vital testimony on this issue'," he failed to inform either the circuit court or the court of appeals what that "vital testimony" would have been. (Answer, Exh. O at 14). Thus, the court concluded that "the circuit court correctly denied [the petitioner's] motion without a hearing, declaring that 'there is nothing set forth in the current motion which demonstrates that significant facts were overlooked at the prior hearing on this issue [of Henry's testimony] or that other specific facts would have altered the result." Id.

- 22 -

In his brief filed on appeal, the petitioner argued that he was denied a fair trial due to the prosecutor's presentation of Mr. Henry's false testimony. Specifically, the petitioner asserted:

> Henry testified that he had not received any promise or recommendations for his testimony. In addition, the prosecutor elicited testimony as to a mandatory prison sentence that [Mr.] Henry would be facing:
>> Q: And in fact you are going to have a mandatory three years in prison. Is that right?
>> A: Correct.
>> Q: At least?
>> A: Minimum.
> Henry later appeared for sentencing, and the State prosecutor in that case stood silent as to any recommendation. The prosecutor in the defendant's case then firmly recommended leniency for his cooperation in the prosecution of the defendant. In fact, the so called "mandatory sentence" that [Mr.] Henry was facing was only a presumptive minimum mandatory sentence. [Mr.] Henry was sentenced to straight probation and served no incarceration as a result of his conviction.

(Answer, Exh. L at 20-21). Thus, the petitioner asserted both that the prosecutor elicited false testimony as to the potential sentence Mr. Henry could be facing and as to the existence of a deal for Mr. Henry's testimony. According to the petitioner, "[t]he result is that the defendant's jury had absolutely no understanding of what [Mr.] Henry expected, or could expect, in exchange for his testimony." Id. Therefore, as the petitioner presented his claims to the Wisconsin Court of Appeals, the two claims were intertwined. Moreover, the two claims were intertwined with his request for an evidentiary hearing.

Mr. Henry testified that he was facing a mandatory-minimum sentence of three years. Mr. Henry was actually facing a presumptive mandatory-minimum sentence of three years. The prosecutor elicited such testimony and did not correct it. Mr. Henry testified that he was facing a possible nine years of incarceration and that the prosecutor handling his case could make a sentencing recommendation.

- 23 -

The petitioner asserts, without supporting evidence, that the prosecutor knew or should have known that such testimony was false. However, nothing in the record suggests that the prosecutor knew Mr. Henry's testimony was false. The prosecutor trying Mr. Henry was not the same prosecutor who prosecuted the petitioner. Moreover, the petitioner failed to cite any facts or case law supporting his contention that under the facts of this case the prosecutor should have known that Mr. Henry's testimony regarding his potential sentence was not accurate.

Accordingly, the petitioner has failed to demonstrate that the prosecution knew or should have known that Mr. Henry's testimony was in error. Therefore, this court cannot conclude that the state court's decision on this issue is contrary to, or an unreasonable application of, Supreme Court law.

<u>Ineffective Assistance of Counsel Claim</u>

The petitioner asserts that he was denied his right to effective assistance of trial counsel because his trial counsel failed to call two witnesses – Angeal Toliver and Harvey Toliver. The petitioner further asserts that Angeal's testimony would have corroborated his version of the events and that Harvey's testimony would have established that the petitioner did not intend to kill Ms. Rogers.

In response, the respondent asserts that the Wisconsin Court of Appeals did not unreasonably apply <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Specifically, the respondent asserts that the court's "conclusions that Angeal Toliver's testimony would have been inconsequential to Stephen Toliver's trial and that Harvey Toliver's testimony would not have reduced or lessened Stephen's participation in Tina Rogers' killing were entirely reasonable and defensible determinations." (Respondent's Brief at 36).

- 24 -

Ineffective assistance of counsel claims are analyzed under Strickland which is "clearly established Federal law, as determined by the Supreme Court of the United States." See Washington v. Smith, 219 F.3d at 627-28. To prevail on a claim of ineffective assistance of counsel under Strickland, a petitioner "must show that counsel's performance was deficient . . . [and] . . . the deficient performance prejudiced the defense." 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

The first component requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In other words, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id. To establish prejudice under the second component, a petitioner "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the court determines that the petitioner has failed to satisfy either component of the Strickland test, it need not address the other. See Chichakly v. United States, 926 F.2d 624, 630-31 (7th Cir. 1991).

A court's review of trial counsel's performance is "highly deferential." United States v. Meyer, 234 F.3d 319, 324 (7th Cir. 2000). "Because of the difficulties inherent in making [an evaluation of effective assistance of counsel], a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged actions 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. "Under

- 25 -

*Strickland*, lawyers are granted wide latitude to make reasonable strategic decisions." Washington v. Smith, 219 F.3d at 629-30.

The petitioner submitted the affidavits of Angeal Toliver and Harvey Toliver to the state courts. Angeal's affidavit established that she would have testified that Jo-Etta Foster told her that the petitioner had yelled at Oliver, "you shot the bitch" or "something like that." (Answer, Exh. O at 22). Harvey's affidavit established that he would have testified in part:

> I asked Stevie and OZ, why was the police questioning them about that woman who was found murdered . . . Stevie[ ] immediately said because this crazy nigger, meaning OZ, . . . killed her! And I asked was he serious and why. Then OZ said because she was a dope feined [sic] bitch and deserved to die[.] Stevie got up[]set and said to OZ, you shouldn't have killed her because it wasn't any of our business if . . . Tina . . . did or didn't steal Commosie's dope and money, it wasn't OZ['s] business. OZ said the bitch made him mad when she laughed after Commosie asked her if she stole his money, so he shot the bitch and he said he didn't like her anyway.

Id. at 23.

The Wisconsin Court of Appeals, deciding only the prejudice component as is allowed under Strickland, see Chichakly, 926 F.2d at 630-31, concluded that "because Angeal's statement included the 'or something like that' qualification, it would not have resolved the conflict between the two versions of [the petitioner's] words." Therefore, the court concluded that the petitioner failed to show that the outcome of the trial would have been different. With respect to Harvey's testimony, the court also concluded that the petitioner was not prejudiced:

> While Harvey Toliver's testimony could have established that Oliver had his own reasons for shooting Rogers, it would not have reduced [the petitioner's] participation in the homicide. For the abundant reasons we have recited, [the petitioner] took several direct and powerful actions that were substantial factors in causing Rogers' death, regardless of the personal animus Oliver may have felt that led him to pull the trigger.

(Answer, Exh. O at 23).

- 26 -

As the court of appeals previously explained, the petitioner did, in fact, take "several direct and powerful actions that were substantial factors in causing Rogers' death", e.g., "[the petitioner] responded to Thompson's page. [The petitioner] and Oliver armed themselves and brought Rogers back to Thompson. [The petitioner] directed Thompson to shoot whomever Thompson believed had taken the drug money." (Answer, Exh. I at 9). Based on the foregoing, this court cannot conclude that the state court's determination that the petitioner was not prejudiced by his trial counsel's failure to call Angeal and Harvery Toliver is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

### The Federal District Court Order

The petitioner asserts that he was denied his Fourteenth Amendment right to due process when the Wisconsin state courts failed to comply with the district court's order and thereby denied him the effective assistance of appellate counsel. Specifically, the petitioner asserts that the district court directed the state court to reinstitute the petitioner's direct appeal with appointed counsel "'as if on direct appeal.'" Toliver, 72 F.Supp.2d at 979 (quoting Castellanos v. United States, 26 F.3d 717 [7th Cir. 1994]). The petitioner further asserts that by denying his request for an evidentiary hearing, the Wisconsin courts failed to comply with the directive of the district court.

In response, the respondent asserts that the State of Wisconsin complied with the district court's order by reinstating the petitioner's direct appeal rights and putting him back in the position he was in before he pursued his direct appeal in 1993 and 1994. The respondent asserts that the restoration of the petitioner's direct appeal rights meant that he could choose to file a Wis. Stat. § 809.30 motion prior to appealing his judgment of conviction. The respondent points out that, with the assistance of counsel, the petitioner filed such a motion.

- 27 -

The respondent also asserts that the district court's order did not direct the state circuit court to hold an evidentiary hearing on the petitioner's motion, were it to be filed.

The Wisconsin Court of Appeals addressed this issue, concluding that "nothing in the federal court order . . . requires an evidentiary hearing":

> The federal court concluded that Stephen had been impermissibly denied the assistance of postconviction counsel on his appeal. Thus, in his most recent postconviction motion, Stephen, with the assistance of counsel, was able to present any of his previous postconviction claims as well as others he chose to pursue. The circuit court concluded, however, that Stephen's new postconviction motion had not "eradicated" the evidence adduced at the 1993 hearing. Therefore, the circuit court evaluated Stephen's motion by considering its allegations and accompanying affidavits, and by referring to the evidentiary record from the 1993 hearing. The court concluded that Stephen had failed to present anything meriting an additional evidentiary hearing.
>
> Stephen now argues that had he been "appropriately represented at his initial postconviction hearing, . . . it is most reasonable to expect that the hearing would have been much different." He adds that "to allow the first hearing to stand as a factual basis for the denial of his request for a hearing in which he can be represented, denies the due process protections that our system is meant to provide to all defendants."
>
> A circuit court may, in the exercise of discretion, deny a postconviction motion without holding an evidentiary hearing when a defendant "'fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief.'" Bentley, 201 Wis. 2d at 309-310 (quoting Nelson v. State, 54 Wis. 2d 489, 497-98, 195 N.W.2d 629 (1972)). Whether a postconviction motion alleges facts that would entitle a defendant to relief presents a question of law, subject to our de novo review. 201 Wis. 2d at 310. If the circuit court denies a postconviction motion summarily, having determined that it fails to allege sufficient facts to entitle the defendant to relief, we apply the erroneous-exercise-of-discretion standard to review the court's decision. Id. at 310-11.
>
> Nothing in the federal court order conflicts with the Bentley standards or requires an evidentiary hearing. Although the federal court commented that "it appears . . . that the recommencement of Toliver's direct appeal will wipe clean the slate," McCaughtry, 72 F. Supp. 2d at 979, it did so in the context of explaining that Stephen's appellate claims were "'unexhausted,'" and clarifying that Stephen retained the right to pursue future federal habeas corpus review following the

- 28 -

completion of his state appeals, id. Thus, we read nothing in the federal court order to somehow mandate an evidentiary hearing. Under Bentley, if such a hearing simply was unnecessary because of the adequacy of the existing evidentiary record, the state circuit court had discretionary authority to deny Stephen's request.

Therefore, while Stephen was entitled to consideration of his postconviction motion following the federal court's decision, his motion and accompanying affidavits still had to offer the circuit court some basis for holding an evidentiary hearing. The fact remains that Stephen's motion alleged nothing to establish any material inaccuracy in the factual findings from the 1993 evidentiary hearing, and he has offered nothing to alter the legal conclusions of the circuit court's 2000 decision.

(Answer, Exh. O at 15-16).

The district court granted the writ "conditionally," "allowing the state to reinstitute [the petitioner's] appeal and provide him appointed appellate counsel, unless he knowingly and intelligently elects to proceed pro se." Toliver, 72 F. Supp. 2d at 979 (citing Romero v. Tansy, 46 F.3d 1024, 1031 [10th Cir. 1995] [if petitioner did not waive right to counsel on appeal, case must be held in abeyance for 120 days to allow state appellate court to reinstate petitioner's appeal as if it had just been filed and provide him with counsel]; Castellanos v. United States, 26 F.3d 717 [7th Cir. 1994] (defendant receives right to an appellate proceeding, as if on direct appeal, with the assistance of counsel).

The district court's order did not require the circuit court to hold an evidentiary hearing. It only required the State to reinstate the petitioner's appeal rights and provide him appointed appellate counsel, which the State did. Thus, the petitioner's challenge to the manner in which his appeal rights were reinstated does not state a basis for the granting of his petition for a writ of habeas corpus.

In summary, considering all the relevant circumstances of the petitioner's guilt, this court finds that the Wisconsin Court of Appeals' decision was not contrary to, or an unreasonable

- 29 -

application of, Supreme Court law.  Nor was it based on an unreasonable determination of the facts.  Accordingly, based on the foregoing, the petitioner's petition for a writ of habeas corpus will be denied.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 31st day of January, 2006.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge